```
              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION
```

FILED
03 APR -3 AM 9:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

```
MALCOLM E. FANCHER,         )
                            )
     PLAINTIFF,             )
                            )
VS.                         )     CV-00-H-1935-S
                            )
RUST CONSTRUCTORS, INC.,    )
                            )
     DEFENDANT.             )
```

ENTERED
APR - 3 2003

## MEMORANDUM OF DECISION

The court has before it the April 23, 2001 motion[1] of defendant Rust Constructors, Inc. ("Rust") for summary judgment. Pursuant to the Court's March 7, 2003 order, the motion was deemed submitted, without oral argument, on March 26, 2003.

### I. Procedural History

Plaintiff Malcolm E. Fancher commenced this action on July 12, 2000 by filing a complaint in this court alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Plaintiff contended that defendant's alleged conduct constitutes unlawful age discrimination. Defendant's April 23, 2001 motion for summary judgment asserts that plaintiff has failed to establish a prima face case for any of plaintiff's

---

[1] On May 17, 2001 defendant notified the court that it had filed on May 14, 2001 a Chapter 11 bankruptcy, and on May 21, 2001 the court acknowledged by court order the 11 U.S.C. § 362 stay. The § 362 stay was lifted December 21, 2001, but the court was not advised of that event until March 4, 2003.



claims.  Defendant filed a brief and evidence[2] in support of its motion.  Plaintiff did not file a brief in opposition to the motion.

**II. Standards for Evaluating a Summary Judgment Motion**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  See id. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  See Anderson v. Liberty Lobby, Inc.,

---

[2] Defendant submitted volumes one and two of plaintiff's deposition with exhibits; deposition of Kenneth Harbor with exhibits; affidavit of Saundra J. Lauerman.

477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. See Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce

3

affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996)

(citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[3]

Plaintiff Malcolm Fancher was hired in 1980 by Rust[4] as a billing clerk in the billing department.  (<u>See</u> Fancher Dep. at 162, 164.)  In 1987 he became the bookkeeper or file clerk for the tax department and his direct supervisor was Leisa Kizer. (<u>See</u> <u>id.</u> at 182-84; Harbor Dep. at 13-14.)  His job duties consisted of updating and filing publications in the tax library. (<u>See</u> Fancher Dep. at 184-85.)  Plaintiff transferred to the position of file clerk in the accounting department in 1995 or 1996.  (<u>See</u> <u>id.</u> at 72-73; 190-93; <u>Harbor Dep.</u> at 15-17.)  His immediate supervisor from the time of this transfer until his termination was Ken Harbor, Vice President of Finance.  (<u>See</u> Fancher Dep. at 133-34; Harbor Dep. at 11, 17.)

In the accounting department, plaintiff's duties consisted of filing vouchers and expense reports in the central filing area.  (<u>See</u> Fancher Dep. at 130.)  He was the only central file clerk in the accounting department.  (<u>See</u> <u>id.</u> at 129, 135-36.)

---

[3] Facts are undisputed unless otherwise expressly noted.

[4] Rust is a merit shop construction company servicing clients who operate pulp and paper mills.  (<u>See</u> Harbor Dep. at 10-11.)  In 1996 Raytheon purchased Rust and split it into two separate companies, the construction side and the engineering side.  (<u>See</u> <u>id.</u>)  Plaintiff worked on the construction side of the business, Rust Constructors, Inc.  (<u>See</u> <u>id.</u> at 11-12.)

The accounting department was the only department with such a position; the other departments spread the filing duties out among various people.  (See id. at 129.)

Although plaintiff's file clerk position did not require the use of a computer, plaintiff received computer training.  (See id. at 364.)  He attended approximately six computer training courses which were held off-site, during normal working hours.  (See id. at 364-72.)  Rust not only paid for these courses, it paid plaintiff for his time while attending these all-day classes.  (See id. at 364-68.)  Plaintiff received all the training he requested.  (See id. at 423.)

In August 1999 Rust's parent company gave Harbor instructions to reduce his work force by ten percent.[5]  (See Harbor Dep. at 50-51.)  Harbor selected Fancher along with three other employees.[6]  (See id. at 51.)  He ranked each employee in the accounting department according to the needs of the department, areas of excess, ability to redistribute work and employee capabilities.  (See id.)  Plaintiff was ranked last

---

[5] Since the mid-1990s business in the pulp and paper industry has been declining.  (See Harbor Dep. at 49.)  To reduce costs, Rust began engaging in a series of reduction in force lay-offs.  (See Fancher Dep. at 49-50; Harbor Dep. at 50.)  There had been a number of reductions in force prior to August 1999.  (See Fancher Dep. at 166-67.)

[6] Another employee, Rebecca Galida, voluntarily resigned during this time.  (See Harbor Dep. at 52.)  When Harbor was making his decision in August 1999, Galida had already informed him of her decision to resign.  (See id.)

based on the above criteria. Although plaintiff performed satisfactorily as the file clerk, he lacked people skills, judgment, speed and accuracy to perform any other position in accounting. (See id. at 22-23, 46-47, 52-54.) In addition, Harbor determined that eliminating the file clerk position would not hurt the accounting department. (See id. at 54.)

Plaintiff was terminated on August 19, 1999. (See Fancher Dep. at 8, 13-14.) His position at Rust was eliminated and his filing duties were reassigned to multiple people throughout the accounting department. (See Harbor Dep. at 54.) Plaintiff has never heard any member of Rust management,[7] including Harbor, make a derogatory remark about an employee's age or any other comment that would indicate a bias against individuals over the age of forty. (See Fancher Dep. at 151-52.) Additionally, plaintiff recalls attending meetings during which the company's policy against discrimination on the basis of age was discussed. (See id. at 154-55.)

### IV. Applicable Substantive Law and Analysis

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims. See

---

[7] Plaintiff did testify that in about 1984 or 1985 Bob Wachter told him he was "too old; they want young blood." (Fancher Dep. at 149-50.) Wachter was a supervisor but he was never plaintiff's supervisor. (See id. at 149.)

7

Standard, 161 F.3d at 1330 (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen"). In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics. See id.; see also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence). A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon. See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987). Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption." Burns v. Gadsden State Community College, 908 F.2d 1512 (11th Cir. 1990). Cf. Wright v. Southland Corp., 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition); see also Bass v. Board of County Commissioners, Orange County, Florida, 242 F.3d 996, 1010 (11th Cir. 2001) ("direct evidence"

refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination."). "Direct evidence is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." Rojas v. Florida, 285 F.3d 1339, 1342, n.2 (11th Cir. 2001)(quoting Schoenfeld v. Babbitt, 168 F. 3d 1257, 1266 (11th Cir. 1999))(citations and quotations omitted). However, direct evidence does not include "stray remarks in the workplace" or "statements by nondecisionmakers" or "statements by decisionmakers unrelated to the decisional process itself." Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (O'Connor, J., concurring) (1989); see also EEOC v. Alton Packaging Corp., 901 F.2d 920, 924 (11th Cir. 1990) (quoting Price Waterhouse).

"In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." Combs, 106 F.3d at 1527. Under the McDonnell Douglas and Burdine framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted

illegally. See id. at 1527-28. The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation. See, e.g., Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Lincoln v. Board of Regents of Univ. Sys., 697 F.2d 928, 937 (11th Cir. 1983). In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly. See McDonnell Douglas, 411 U.S. at 802 (hiring); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); see also Nix, 738 F.2d at 1185 (discipline); Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.[8] See Rojas, 285 F.3d at 1342; Combs, 106 F.3d at 1528. The employer "need not

---

[8] See Chapman, 229 F.3d at 1032 (A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

10

persuade the court that it was actually motivated by the proffered reasons." Burdine, 450 U.S. at 254-55; see Chapman, 229 F.3d at 1024. If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[9] Where the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons. See Chapman, 229 F.3d at 1024-25. Where plaintiff seeks to prove pretext by showing she was more qualified than the person given the job or promotion, she "must adduce evidence that the disparity in qualifications is 'so apparent as virtually to jump off the page and slap you in the face.'" Cofield v. Goldkist, Inc., 267 F3d 1264, 1268 (11th Cir. 2001) (quoting Deines v. Texas Dept. of Protective and Reg. Sevs., 164 F.3d 277, 280 (5th Cir. 1999)). Therefore, the relevant inquiry "is not to judge which employee was more qualified, but to determine whether any disparity . . . is so great that a reasonable fact-finder could infer that [defendant]

---

[9] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. Simply quarreling with that reason is not sufficient. Chapman, 229 F.3d at 1030.

11

did not believe" that the person granted the promotion was better qualified. <u>Cofield</u>, 267 F.3d at 1268. Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case. <u>See Combs</u>, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the <u>McDonnell Douglas</u> and <u>Burdine</u> framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Burdine</u>, 450 U.S. at. 253. Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. <u>See Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147-48 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value

12

of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion);[10] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

The Eleventh Circuit has adopted a variation of the test articulated by the Supreme Court in McDonnell Douglas for cases arising under the ADEA. See Mitchell v. Worldwide Underwriters Ins. Co., 967 F.2d 565, 566 (11th Cir. 1992). In order to make out a prima facie case for an ADEA violation,, the plaintiff must show that he (1) was a member of the protected group of persons between the ages of forty and seventy, (2) was subject to an adverse employment action, (3) was replaced with a person outside the protected group, and (4) was qualified to do the job. See Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996); Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989). These criteria are altered slightly in both a

---

[10] The court in Chapman modified the statement in Combs contrary to this holding in Reeves after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law. See Chapman, 229 F.3d at 1025, n.11.

13

reduction-in-force ("RIF") case and where a position is eliminated in its entirety.  In these instances, the plaintiff establishes a prima facie case by demonstrating (1) that he was in a protected age group and was adversely affected by an employment decision, (2) that he was qualified for his current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision.  See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1329 (11th Cir. 1998); Jameson, 75 F.3d at 1532; Mitchell, 967 F.2d at 567-68; Early v. Champion Intern. Corp., 907 F.2d 1077, 1082 (11th Cir. 1990); Verbraeken, 881 F.2d at 1045-46.

   Plaintiff's complaint alleges defendant terminated him because of his age in violation of the ADEA.  (See Compl. ¶ 7.) Defendant Rust argues that it is entitled to summary judgment as to Plaintiff's race discrimination claims because (1) plaintiff cannot make out a prima facie case of age discrimination; (2) the events occurred more than 180 days prior to the EEOC charge; and (3) the plaintiff did not file his action within 90 days of receipt of the right to sue letter.  (See Def.'s Motion for Summary Judgment at 1-2, Doc. No. 12.)  Wisely, however, defendant does not argue the latter two in its brief for summary judgment.  As the court finds these two arguments without

14

merit,[11] it only addresses the prima facie case.

It is undisputed that plaintiff satisfies the first two elements of his prima facie case.  (See Def.'s Brief at 8.) Plaintiff was over the age of forty at the time of his termination and he was qualified for his position as a filing clerk.  Defendant argues, however, that plaintiff cannot meet the third element requiring him to present evidence from which a jury could reasonably conclude that Harbor intended to discriminate on the basis of age when he selected plaintiff for RIF.  (See id.)

The only evidence of discriminatory intent that plaintiff points to is a conversation he had with Bob Wachter in 1985 or 1986 while having a drink after work.  (See Fancher Dep. at 149-50.)  Plaintiff recounted this conversation as follows:

> I was talking to him one time off the record, I said man, seems like I can't go anywhere around this place. He said you have got the same problem I have only I was here in time to get somewhere with it. . . .  And he said you are too old; they want young blood.

(Id. at 149.)  Plaintiff admits, however, that Bob Wachter was not his supervisor.  (Id.)  In fact, it is undisputed that Wachter was not involved in any decision regarding the plaintiff. Rust's parent company made the decision to reduce the work force and Harbor decided which of the accounting department employees

---

[11] First, plaintiff was terminated on August 19, 1999 and he filed his EEOC charge October 22, 1999, well within the 180 day limitation.  Second, the right to sue letter was mailed on April 12, 2000 and plaintiff filed suit July 12, 2000.  (See Compl.) Because suit was filed 91 days after the letter was mailed to plaintiff, surely it was within 90 days of receipt of the right to sue letter as required by statute.  See 42 U.S.C. § 2000e-5(f)(1).

to terminate. (See Harbor Dep. at 50-54.) This statement by Wachter is certainly not probative of a discriminatory intent behind plaintiff's termination. See Standard, 161 F.3d at 1329-30 (holding supervisor's statement that "older people have more go wrong" insufficient to establish third prong of prima facie case); Mauter v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987)(holding that company's vice president's statement, "The Hardy Corporation was going to weed out the old ones" did not present a genuine issue of material fact as to discriminatory intent when the vice president played no part in the decision to terminate plaintiff and had no knowledge of the decision-making process); Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 610-11 (11th Cir. 1987)(holding that plaintiff did not establish a prima facie case by introducing personnel manager's statement, "You would have to take another physical examination, and at your age, I don't believe you could pass it.")

    Plaintiff also attempts to raise an inference of discrimination by alleging he was not provided computer training which made him vulnerable to RIF. (See Compl. ¶ 7.) However, there is insufficient evidence to support this contention. It is undisputed that plaintiff was provided computer training by Rust even though his position as file clerk did not require the use of a computer.[12] (See Fancher Dep. at 364-372, 269.) Plaintiff

---

[12] Although he did not need computer training to perform his job, he desired such training to strengthen his skills for other job opportunities within Rust or elsewhere. (See Fancher Dep. at 269-73.) However, during his entire employment plaintiff never applied for or actively pursued another position at Rust or at

admits he received all the training he requested. (See id. at 423.)

Plaintiff also alleges in his complaint that less tenured Rust employees should have been chosen for RIF instead of him, and he should have been transferred into their position. (See Compl. ¶ 7; see also Fancher Dep. at 213.)  Eleventh Circuit precedent, however, does not require an employer to terminate a younger employee and replace him with an employee in the protected age group.  See Jameson, 75 F.3d at 1532-33; Early v. Champion Int'l Corp., 907 F.2d 1077, 1083 (11th Cir. 1990).

Because plaintiff has presented insufficient evidence to allow a rational juror to find Rust intended to terminate plaintiff because of his age, plaintiff has failed to establish a prima facie case under the ADEA.  In summary, the court finds that no material issues of fact remain and that defendant Rust Construction, Inc. is entitled to judgment as a matter of law as to all claims asserted by plaintiff.  A separate order will be entered.[13]

DONE this 3rd day of April, 2003.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

any other company.  (See id. at 257-59, 278-80.)

[13] This decision renders defendant's March 26, 2003 motion to dismiss moot.